**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

GERALD DAVIS FULLER,

   Plaintiff,

   v.

SECRETARY OF PUBLIC SAFETY
 DEPT. PUBLIC SAFETY AND CORR.
 SERVICES,
WARDEN FRANK BISHOP,
SGT. GERALD E. TRENUM, CO III,
SGT. JONATHAN VANMETER, CO II,
SGT. BRANDON WINE, CO II,
COMMISSIONER OF CORRECTION,

   Defendants.

Civil Action No.: PWG-20-96

**MEMORANDUM OPINION**

In response to the above-entitled civil rights complaint, Defendants filed a Motion to Dismiss or for Summary Judgment. ECF No. 21. Plaintiff Gerald Fuller opposes the motion. ECF Nos. 23 & 24. Also pending is Mr. Fuller's Motion to File Affidavit of Horace Montaque, which shall be granted as unopposed. ECF No. 13. No hearing is necessary to resolve the pending dispositive motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion, construed as a Motion to Dismiss, shall be granted.

**BACKGROUND**

Mr. Fuller at all times relevant[1] was incarcerated at North Branch Correctional Institution ("NBCI") for service of a life sentence. At the time he filed his complaint, he held the position of

---

[1] While this matter has been pending, Mr. Fuller was transferred to Western Correctional Institution. ECF No. 27.

"Special Utility Worker" in Housing Unit ("HU") 1, which is a segregation unit. ECF No. 1 at 2. He was supervised by Sgts. D. Trenum, Brandon Wine and Jonathan VanMeter. *Id*.

Walter Hall is an inmate who "has been segregated for approximately two decades or more" and has a history of throwing feces at both staff and inmates who have offended him or have not complied with one of his requests. ECF No. 1 at 2, ¶ 4. Mr. Fuller maintains that Warden Bishop and other "NBCI Prison managers and staff" use Mr. Hall as an informant to find out information regarding other prisoners. *Id*. at ¶ 5. According to Mr. Fuller, prison staff move Mr. Hall to different housing units where there is a suspicion that illicit activity is ongoing and, after he gives them information, he is rewarded with special privileges. *Id*. Mr. Fuller states that Mr. Hall is normally housed on "the psychiatric tier due to his behavior." ECF No. 1 at 3, ¶ 7.

Mr. Fuller asserts he was denied his Fifth, Eighth, and Fourteenth Amendment Rights when "white nationalist Correctional employees who are protected by Criminal Law Article § 3-205(a)(1), knowingly, deliberately, and intentionally created a situation that caused [him] . . . a Black Native American prisoner to come into contact with feces and urine in their stead for their entertainment." ECF No. 1 at 1. He also claims that NBCI staff were fully aware of Mr. Hall's habit of "'shitting down'" staff and inmates, but Mr. Fuller was nevertheless required to come into contact with "feces and urine for their entertainment" because he is Black. *Id*. at 2. Mr. Fuller complained about his treatment, stating that when an inmate like Mr. Hall throws fecal matter at staff, "staff can beat them then charge them with assault" but when it is done to a fellow inmate, nothing is done about it. *Id*. at 3, ¶ 8. Mr. Fuller surmises that Mr. Hall's conduct occurs because "these type inmates" are put into a position by the "Warden, Supervisors, and the Psychology after he was assaulted and that "[i]t is reported that Hall has HIV." *Id*. at 4, ¶ 8.

Mr. Fuller appealed the Warden's denial of his administrative remedy procedure complaint ("ARP"), alleging that he was denied equal protection of the law when correctional staff "weaponized" a mentally ill inmate's behavior "against principally Black prisoners." ECF No. 1 at 4, ¶ 9. He claims that "It is principally prisoners of color whom white nationalist staff send under the gun in their stead to interact with these type prisoners." *Id*. Mr. Fuller's appeal to the IGO resulted in a decision affirming the Warden's dismissal after a hearing before the Office of Administrative Hearings (OAH) and he sought review in the Circuit Court for Allegany County. *See* ECF No. 5-1 at 2. The court affirmed the IGO's dismissal, concluding that "it was reasonable for the ALJ to have determined that the admission of [additional records pertaining to WH, another inmate] would not help [Mr. Fuller] establish that the DOC employees should have known of an imminent attack on Petitioner." *Id*.

Mr. Fuller submitted a declaration from another inmate, Horace Montaque, which is accompanied by Mr. Montaque's ARP complaining that he was assaulted in a similar manner. ECF No. 13. Mr. Montaque complains that correctional staff at North Branch Correctional Institution allow inmates to assault other inmates in this manner without repercussions. ECF No. 13-1. He further states that the assaults are enabled by the failure to secure feed-up slots on the doors, in contradiction to applicable regulations. ECF No. 13-2 at 2. Mr. Montaque does not state that Mr. Hall assaulted him.

As relief, Mr. Fuller seeks monetary damages, injunctive relief, and declaratory relief. ECF No. 1 at 5. Included in his request for relief, Mr. Fuller seeks an order from this Court requiring "Defendants be charged under Maryland's Criminal Statute, Criminal Law Article § 3-205(a)(1), with causing [him] to come into contact with human feces and urine." *Id*.

Defendants have provided a copy of Mr. Fuller's ARP, the investigative report into his allegation, and the decision issued by the OAH in his IGO case. ECF No. 21. In his ARP, Mr. Fuller claimed that Mr. Hall assaulted him on July 15, 2018, after staff forced him to collect Mr. Hall's trays knowing that there was animosity between the two inmates. ECF No. 21-3 at 4. As part of the investigation into Mr. Fuller's claim, the video surveillance was reviewed for the day in question. *Id.* The video revealed that Mr. Fuller neither gave nor retrieved Mr. Hall his breakfast tray and no assault was observed. *Id.* at 5, ¶ 5. Further, Sgt. Trenum, who was the officer in charge in HU 1, provided a report stating that he was never advised that Mr. Hall threw "a feces substance" on Mr. Fuller's shoulder during feed-up. *Id.* at 6. Sgt. Trenum further observed that staff "sometimes handles inmate Walter Hall's feed up trays to avoid such claims due to his history of liquid assaults on other inmates." *Id.*

The decision issued by the OAH summarizes Mr. Fuller's claims and the evidence presented during the hearing on the matter. ECF No. 21-8 at 3-4 (findings of fact). Of relevance here, the Administrative Law Judge found that Mr. Hall had been treated more favorably than other inmates on the tier because he received additional food; prior to the date of the alleged assault, Officer Wine ordered that Mr. Hall was not to receive extra food; and before July 15, 2018, Mr. Fuller and Mr. Hall had verbal altercations but neither had placed the other on an enemies list. *Id.* at 4. Further, Mr. Fuller never advised any of the officers involved that Mr. Hall presented a threat to his safety, nor did any officer have any reason to know that Mr. Hall would assault Mr. Fuller. *Id.*

Officer Wine testified at the IGO hearing and acknowledged that Mr. Hall had a reputation for attacking others with feces; that his cell smelled of feces; and that sometimes he provided information to officers regarding activities on the tier. ECF No. 21-8 at 7. Officer Wine also

4

confirmed that he told Mr. Fuller not to give Mr. Hall any extra food; that Mr. Fuller complied with that request; and that Mr. Fuller had asked him to serve Mr. Hall with his tray. *Id*. at 7-8. Officer Wine denied knowing that Mr. Hall threatened Mr. Fuller with an attack and was unaware of any animosity between the two inmates. *Id*. at 7. Had he been aware of a threat to Mr. Fuller, Officer Wine stated he would have contacted the officer in charge, recorded a Matter of Record, or noted the event on Mr. Fuller's enemies list. *Id*. at 8. Officer VanMeter and Sgt. Trenum provided similar testimony at the IGO hearing. *Id*. at 8.

Mr. Fuller testified at the IGO hearing as well and claimed that he told Officer VanMeter about Mr. Hall's threats and Mr. Hall's agenda to get Mr. Fuller moved off of the tier. *Id*. at 9. "He claimed that CO VanMeter deliberately caused [Mr. Fuller] to be sprayed with fecal matter by [Mr. Hall] because he required [Mr. Fuller] to serve [Mr. Hall]." *Id*. The ALJ noted that Mr. Fuller had filed an initial ARP on July 19, 2018 which included the following statement:

> The episode with me, is that when I was unable to give [WH] extra trays, he became angry and threatened to shit staff and me down and nobody took precautions . . . .
>
> [WH] had made boasts that he was going to shit me down and refused trays from officers arguing that I was required to give him his tray, *I cannot say that each of these officers were aware of the threats.* I was subsequently ordered to give [WH] his tray or face punishment up to and including firing.

ECF No. 21-8 at 9 (emphasis and brackets in original). Based on the evidence presented, the ALJ observed that he "cannot find that [Mr. Fuller] warned the COs of any imminent threat, there is no evidence that the DOC or any of its employees failed to protect [Mr. Fuller] as they are required to do under . . . DCD[50-2J]." *Id*. at 10.

Mr. Fuller maintains that although he requested them in advance, he was improperly denied records pertaining to Mr. Hall's behavioral history during the IGO hearing. ECF No. 24 at 2, ¶ 5 (Declaration). He further claims that the documents and reports he has sought "would show that

5

staff knowingly engage and pacify Walter Hall, then withdraw privileges and benefits knowing that he would resort to 'shitting' down staff and inmate workers, whomever he can get to." *Id.* at 3, ¶ 9. Mr. Fuller characterizes this as weaponizing Mr. Hall and states it has been done in the past. *Id.* Mr. Fuller asserts that Officers VanMeter and Wine "weaponized" Mr. Hall when they stopped providing him with extra food, then Officer VanMeter made Mr. Fuller retrieve Mr. Hall's tray and that's when the assault occurred. ECF No. 23 at 3-4. According to Mr. Fuller, Officer VanMeter and other staff "thought it was funny." *Id.* at 3.

## STANDARD OF REVIEW

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint'). "We are not required, however, 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' Nor must we 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

A "motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). But, an affirmative defense can be resolved by way of a Rule 12(b)(6) motion "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* "This principle only

applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

## DISCUSSION

Defendants assert that the complaint is subject to dismissal because the Eleventh Amendment bars suit against them in their official capacity; there are insufficient facts alleged to support a claim of supervisory liability; the IGO decision which was affirmed by the Circuit Court for Allegany County precludes Mr. Fuller's litigation of the same claims here under principles of res judicata; and they are entitled to qualified immunity. ECF No. 21-1.

### A. Personal Participation

Mr. Fuller's complaint contains no allegations that Warden Bishop and the Commissioner of Correction participated personally in the alleged violations of his rights, outside of their signatures on his ARP finding his allegations to be without merit. Further there is no specific allegation raised against the Secretary of Public Safety. Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the

supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 846 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Denial of Mr. Fuller's ARP requests and appeals does not alone impose liability. *Whitington v. Ortiz,* 307 Fed. App'x 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek,* 240 Fed. App'x 777, 780 (10th Cir. 2007) (unpublished).

The complaint as to Warden Bishop, the Commissioner of Correction, and the Secretary of Public Safety is dismissed.

**B.     Collateral Estoppel**

Closely related to the principles of *res judicata* is the doctrine of collateral estoppel. Under collateral estoppel, issues of fact or law that have been conclusively determined in a previous lawsuit cannot be litigated in subsequent lawsuits brought by the same party. *In re Microsoft Corp.*, 355 F.3d 322, 326 (4th Cir. 2004). Collateral estoppel applies if (l) the issue "is identical to the one previously litigated;" (2) the issue "was actually resolved in the prior proceeding;" (3) the issue "was critical and necessary to the judgment in the prior proceeding;" (4) the prior judgment is final and valid; and (5) the party "to be foreclosed by the prior resolution of the issue" had "a full and fair opportunity to litigate the issue" in the prior proceeding. *Id*. Like *res judicata*, a Court can consider collateral estoppel on its own motion under special circumstances that call for the efficient use of judicial resources. *See Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998); *see also Eriline v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citing favorably *Pfrommer's* ruling that collateral estoppel may be applied *sua sponte*).

Under 28 U.S.C. § 1738, this Court is generally required to accord state court judgments affirming state administrative agency decisions the same issue and claim preclusion effect as they would be entitled in the state courts where the decision was rendered. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, if a Maryland state court would be precluded from considering Mr. Fuller's claims based on the state court's decision rejecting his claim, this Court is similarly precluded. Collateral estoppel applies to claims raised in Maryland courts "only if (1) the issue presented is identical to the issue previously adjudicated, (2) the party to be estopped was a party in the prior action, and (3) there was a prior final judgment on the merits." *Alston v. Robinson*, 791 F. Supp. 569, 578 (D. Md. 1992) (citing *O'Reilly v. County Bd. of Appeals*, 900 F.2d 789, 791 (4th Cir. 1990)); *MPC, Inc. v. Kenny*, 279 Md. 29, 35, 367 A.2d 486, 490 (1977).

Mr. Fuller implies that he was not provided a full and fair opportunity to pursue his claim because he was not permitted access to evidence regarding Mr. Hall's institutional record of assaultive behavior. A finding that the IGO hearing was not fair to Mr. Fuller would mean that this Court is not required to give the resultant decision preclusive effect. However, "the state proceedings need to no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482 (1982). Here, the evidence Mr. Fuller claims should have been considered was essentially conceded by Defendants; that is, Mr. Hall has a history of assaulting others in the manner described and alleged by Mr. Fuller.

"Under Maryland law, preclusion principles apply to the judgment of a court which affirms or reverses administrative determinations, *Esslinger v. Balt. City*, 622 A.2d 774, 781 (Md. Ct.

10

Spec. App. 1993), and a party will be collaterally estopped from re-litigating issues decided in such an adjudication where: (1) the issue raised in the prior action is identical with the issue presented in the action in question; (2) there is a final prior judgment on the merits; and (3) the party against whom estoppel is asserted was a party to the prior litigation." *Batts v. Lee*, 949 F. Supp. 1229, 1234 (D. Md. 1996), (citing *Alston v. Robinson*, 791 F. Supp. 569, 578 (Md. 1992)); *see also Haskins v. Hawk*, 2013 WL 1314194, *18 (D. Md. 2013) ("[R]egardless of whether an administrative determination is entitled to collateral estoppel effect, 'it is crystal clear that a final judgment of a circuit court affirming [or reversing] a decision of an administrative agency . . . is entitled to full preclusive effect.'") (quoting *Esslinger v. Baltimore City*, 95 Md. App. 607, 621 (1993)).

The issue raised by Mr. Fuller in his IGO proceeding is identical to the claims raised in the complaint filed in this Court. Indeed, Mr. Fuller references the responses he received to his ARP as well as the IGO hearing results and his disagreement with the Circuit Court's decision affirming that decision in the complaint filed here. *See* ECF No. 1. Mr. Fuller's IGO complaint was summarized as:

> On July 12, 2018, Inmate [WH] threatened to throw excrement on [Grievant] and have him moved from the Tier. On July 15-16, 2018 [WH] followed through with the threat. [Grievant] claims his prior complaints to the staff were unheeded and they failed to provide him with adequate protection from the attack. The Warden responds that video surveillance on the day of the incident does not support [Grievant's] version of the incident and no assault took place.

ECF No. 21-8 at 1 (brackets in original). The prior judgment concluded that Mr. Fuller failed to prove by a preponderance of the evidence that the officers present knew about the danger presented by Mr. Hall but failed to do anything to protect him. Thus, Mr. Fuller is collaterally estopped from raising an Eighth Amendment claim that Defendants failed to protect him. Additionally, Mr. Fuller's allegation that he was subjected to the ire of another inmate because he is Black, or for

11

some other nefarious reason, is also subject to collateral estoppel. While the ALJ did not specifically find that Mr. Fuller was not targeted due to his race, the finding that Mr. Fuller's claims were without any evidentiary support applies to all of the claims he asserts.

**C.     Other claims**

Mr. Fuller's assertions that the existence of a statute in Maryland making it a crime for an inmate to deliberately expose a correctional officer to bodily fluids somehow entitles him to demand criminal prosecution of Mr. Hall is frivolous. Mr. Fuller cannot demand the criminal prosecution of another as he has no standing as an alleged crime victim to do so. *See Banks v. Buchanan*, 336 Fed. App'x 122, 123 (3d Cir. 2009); *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997); *Sibley v. Obama*, 866 F. Supp. 2d 17, 22 (D.D.C. 2012) *aff'd*, Civ. No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012), cert denied, 568 U.S. 1160 (2013); *Speight v. Meehan*, Civ. No. 08-3235, 2008 WL 5188784, at *3 (E.D. Pa. Dec. 9, 2008). Moreover, the fact that the Maryland State legislature has chosen to punish those who put the safety and well-being of correctional officers at risk does not entitle Mr. Fuller, or anyone else, to demand similar legislation.

## CONCLUSION

The complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. Dismissal for this reason qualifies as a dismissal under 28 U.S.C. § 1915(e) and requires a "strike" under 28 U.S.C. § 1915(g). When as here a complaint filed by a prisoner is dismissed in its entirety because it is frivolous, malicious or fails to state a claim it qualifies as a "strike" under the provisions of 28 U.S.C. § 1915(g). *See Blakely v. Wards*, 738 F.3d 607, 610 (4th Cir. 2013) (dismissal of complaint on grounds enumerated in § 1915(g), and not procedural posture at dismissal, determines whether the dismissal qualifies as a strike).

More recently, the Supreme Court held that dismissal with or without prejudice for any of the grounds enumerated in § 1915(g) constitutes a "strike" under the Act. *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1724 (2020). Because this complaint is dismissed for failure to state a claim, the dismissal constitutes a strike. Moreover, the dismissal shall be with prejudice, for the reasons already stated. Mr. Fuller is reminded that under 28 U.S.C. §1915(g) he will not be granted *in forma pauperis* status if he has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it . . . fails to state a claim upon which relief may be granted, unless" he can establish he "is under imminent danger of serious physical injury."

A separate Order follows.


November 4, 2020\_\_\_                                  \_\_\_\_\_/S/_____
Date                                                                       Paul W. Grimm
                                                                                    United States District Judge